IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| COLONY INSURANCE COMPANY, | * |
| as subrogee for Regeneration, LLC | * |
| and Roy Granger, | * |
| | * |
| Plaintiffs, | * |
| | * Case No. 3:14-cv-1051-WHA-TFM |
| v. | * |
| | * |
| AL & SONS CORP. and | * |
| AL MITCHELL, | * |
| | * |
| Defendants. | * |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

COME NOW the Defendants, by and through counsel, and submit the following

argument and authority in support of its Motion for Summary Judgment (Doc. 11) and

in reply to the Opposition to the Defendants' Motion for Summary Judgment filed by

the Plaintiff. (Doc. 13):

I.    Al & Sons is Entitled to Summary Judgment on the Common Law Indemnity
      Claim Asserted by Colony

As argued previously, Regeneration, LLC (hereinafter "Regeneration") and Al &

Sons Corp. (hereinafter "Al & Sons") were jointly sued by Saucier Investments, the

owner of the Pepperell Mill building damaged by the fire at issue, in state court for

damages arising from the fire. (See Exhibit A to Doc. 11, State Court Complaint). The

Saucier Investments state court Complaint asserted two basic claims. Count I asserted

claims of negligence or wantonness collectively against the Defendants for failing to

exercise due care in their deconstruction efforts in the area where the fire occurred and that the Defendants negligently and/or wantonly caused or allowed a fire to begin in the Pepperell Mill building. *Id.* at ¶¶ 24-26. Further, Count II of the Saucier Investments state court Complaint asserted claims of negligent or wanton <u>supervision</u> against the Defendants alleging that, in spite of knowledge of the fire hazards resulting from the work in the mill, the Defendants "negligently or wantonly failed to exercise appropriate supervision over their employees while they were working in the lint house area." *Id.* at ¶¶ 28-30.

A.    The Relationship Between Regeneration and Al & Sons

In their response, Colony Insurance Company (hereinafter "Colony"), the insurance carrier for Regeneration, attempts to distance Regeneration from Al & Sons and argue that Al & Sons was an independent contractor on the job site for which Regeneration bore zero responsibility. This contention is contrary to the allegations of liability made by Saucier Investments in the underlying case, as well as the evidence gathered in that litigation.

At the outset, it is undisputed that Saucier Investments sued Regeneration and Al & Sons as joint tortfeasors with respect to the fire at issue in this case. (See Exhibit A to Doc. 11, State Court Complaint). While Colony, purportedly acting on behalf of Regeneration, now seeks to distance Regeneration from Al & Sons, the following facts are undisputed and support the conclusion that Regeneration and Al & Sons were sued jointly and ultimately were jointly subject to liability in the Saucier Investments case as

joint tortfeasors:

- In describing the relationship on the Pepperell Mill project between Saucier Investments and Regeneration, Darryl Saucier of Saucier Investments testified that Regeneration was the "general contractor" on the project and that Regeneration brought Al & Sons to the job site as a subcontractor. (See Exhibit J to Doc. 11, Depo. of D. Saucier, p. 62-64). Saucier also testified that Regeneration had supervisory responsibilities over subcontractors like Al & Sons while working on the job site and that it was Regeneration's role "to protect my investment and to make sure that they were doing their job properly in making sure they didn't do anything that anybody could get hurt safety wise or damaging the property. . . ." *Id*. Saucier relied on Regeneration "one hundred percent" to make sure this was done, including monitoring and taking into account any potential fire hazards on the job. *Id.*   In sum, it was Saucier's position that Regeneration was "in charge of the project and supervising Mr. Mitchell and his people in such a fashion that they would do the work in a proper manner." *Id*. at p. 213-14.

- Consistent with Darryl Saucier, Roy Granger of Regeneration testified that Regeneration was acting as the general contractor for the deconstruction of the buildings at the Pepperell Mill site and that his company hired Al & Sons to perform deconstruction at the mill under his direction. (See Exhibit L to Doc. 11, Depo. of R. Granger, p. 35-36). In addition to bringing Al & Sons to the project to

assist in the deconstruction efforts, Granger further testified that all decisions related to the salvage and deconstruction of the mill were "made by me and everything was run by me." *Id*. at 31-21. Although Colony, on behalf of Regeneration, now attempts in this litigation to distance the companies from each other, Granger testified that had he been dissatisfied with the work performed by his subcontractor, Al & Sons, on the project, he could have terminated them from the project. *Id*. at 72-73.

- At no point in the Saucier Investments state court litigation did Regeneration file a cross-claim against Al & Sons for common law indemnity. In fact, even in the answer filed by Regeneration in the Saucier Investments state court case, it did not assert any affirmative defenses challenging agency or asserting that Al & Sons, the jointly-sued co-defendant in the Saucier Investments state court litigation, was an independent contractor for which no liability to Regeneration could attach. (See Exhibit B to Doc. 11, Answer in Saucier case of Regeneration and Granger). Regeneration brought Al & Sons to the job site and it was Regeneration, not Saucier Investments, who executed a contract with Al & Sons to perform work at the site. (See Exhibit G to Doc. 11, Contract between Regeneration and Al & Sons). In this contract, Al & Sons contracted with Regeneration to "perform certain types of work at subject site related to the purchase and removal of non-ferrous and ferrous metals." *Id*. While the method of compensation for the work performed by Al & Sons at the project site varied

depending upon the specific task, it is undisputed that any contract for work at the site was with Regeneration, not Saucier Investments, and that Regeneration was in charge of what occurred at the site. In addition, the contract presented by Regeneration actually required Al & Sons to procure certain types and levels of insurance to perform work at the site for Regeneration. *Id.* The contract contained no contractual indemnity language between the parties. *Id.*

- On October 11, 2013, before the Saucier Investments case was even filed, Colony, the insurance carrier for Regeneration, filed a declaratory judgment action against Regeneration and Saucier Investments seeking to determine its rights and obligations under its commercial general liability policy previously sold to Regeneration. See, *Colony Insurance Company v. Regeneration, LLC, et al.,* previously filed in the United States District Court for the Middle District of Alabama, Eastern Division (Case No. 3:13-cv-762-MEF-TFM) (Doc.1). On September 9, 2014, after significant discovery in the Saucier Investments state court case, Colony filed a First Amended Complaint for Declaratory Judgment against Regeneration and Saucier in which Colony asserted that Regeneration "entered into a contract with Al & Sons wherein Regeneration subcontracted certain demolition work at the Pepperell Mill to Al & Sons." (See Doc. 50 in Colony Declaratory Judgment litigation). [1] In Colony's declaratory judgment action, Colony sought to invoke exclusion J(5) of its policy which it alleged

---

1 For the Court's convenience, a copy of the First Amended Complaint for Declaratory Judgment referenced above is attached hereto as Exhibit O.

negated coverage for Regeneration for "property damage" to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations . . . ." (See Doc. 50, ¶21 of Colony Declaratory Judgment litigation). In fact, this was the position Colony was still asserting against Regeneration when the cases were settled at mediation a month later on October 3, 2014. These assertions are inconsistent with the position now taken by Colony in an attempt to manufacture a claim through Regeneration to recover the settlement proceeds voluntarily paid by Colony to resolve the Saucier Investments litigation.

The position now advocated by Colony regarding the relationship between Regeneration and Al & Sons contradicts both the allegations against the companies in the Saucier Investments state court litigation, as well as the undisputed evidence set forth above. The liability exposure to Regeneration in the Saucier Investments litigation was two-fold. First, because of the unique and close relationship between Saucier Investments and Regeneration, and their principals, Darryl Saucier and Roy Granger, Regeneration was placed in charge of the entire job site and controlled various vendors and the work performed by various vendors and subcontractors like Al & Sons at the job site. In sum, Regeneration assumed, based both on its contractual relationship with Saucier Investments and confirmed by the consistent deposition testimony of Darryl Saucier and Roy Granger, the duty to maintain safety at the job site and generally

oversee the work being performed at the job site. This included supervisory authority over the vendors at the site, including subcontractors like Al & Sons who were brought to the site to perform work.[2] This also included a general assumed duty, as described by Darryl Saucier, to protect the site from damage or harm.

Second, in addition to having general supervisory responsibility for safety at the Pepperell Mill site, including supervising the work of various vendors and subcontractors at the site, Regeneration also had an independent duty to make sure the structures and property were protected from unexpected incidents like the fire at issue. In addition to Roy Granger's testimony on behalf of Regeneration that all decisions related to the salvage and deconstruction of the mill were "made by me and everything was run by me," Granger also testified that an after-hours security presence was maintained at the Pepperell Mill building during phases of the deconstruction work. (See Exhibit L to Doc. 11, Depo. of R. Granger, p. 31-32, 70). However, the after-hours security was removed from the building after the more valuable copper had been removed from the site. *Id.* at 140-141. In addition to the after-hours security presence which was on-site at various times, Regeneration also hired a former Pepperell Mill employee, Wayne Sims, to assist in the deconstruction efforts. *Id.* at 139-140. Sims was the former head of maintenance at the mill and was very familiar with the various systems at the mill building. *Id.* Part of his job was to perform walk-throughs of the mill building at the end of the work day. (See Exhibit M to Doc. 11, Depo. of W. Sims, p.

---

2 While Al & Sons denies that anything it did or did not do caused the fire at issue in this case, even if, arguendo, this were true, this still would not absolve Regeneration from joint and several liability exposure based on the duties

7

78-79). Sims, who was the last person at the mill building the day of the March 12, 2013 fire, did <u>not</u> do his normal walk-through of the building, including the third floor where the Al & Sons employees had been working, because he was "tired that day." *Id*. at 78-79. The fire was first reported at 7:20 p.m. on March 12, 2013; approximately three hours and 20 minutes after the last Al & Sons employee left the site. (See Exhibit K to Doc. 11, Report of Deputy State Fire Marshal Stan Ross, pp. 1 and 5). Thus, in addition to the assumed duty to supervise vendors and subcontractors at the job site, Regeneration also assumed a more general duty to oversee safety at the job site, including security and end-of-day walk-throughs to make sure the site was secured and not exposed to trespassers or other hazards.

Based on the above, as well as the prior argument and authority presented by Al & Sons in support of its Motion for Summary Judgment, Regeneration and Al & Sons were clearly sued by Saucier Investments as joint tortfeasors and each had liability exposure as joint tortfeasors in connection with the fire at issue in this case.   As such, there can be no contribution or indemnity under Alabama law and the Defendants are entitled to summary judgment.

      B.    <u>Colony's Active v. Passive Negligence Argument</u>

Colony acknowledges the general rule in Alabama that, in the absence of a statutory or contractual basis otherwise, there is no contribution or indemnity among joint tortfeasors. *Ex parte Stenum Hosp.*, 81 So.3d 314, 318 (Ala. 2011).[3] Colony argues

---

it assumed at the job site to Saucier Investments.

3  There is no statutory or contractual basis for indemnity in this case and the only theory at issue is Colony's claim

that this long and well-established principal of Alabama law should not be followed in this case because any negligence or wantonness on behalf of Regeneration was "passive" versus the allegedly "active" negligence of Al & Sons. Based on the previously asserted undisputed material facts and authorities set forth previously, this is simply a bridge too far under the facts of this case and the allegations jointly asserted against the parties in the Saucier Investments state court litigation.

Colony presents no Alabama cases in support of its "active" versus "passive" argument which are similar to the facts and theories of liability asserted against the parties in the Saucier Investments state court lawsuit. For example, *Unicore, Inc. v. Tennessee Valley Authority*, 768 F.2d 109 (6th Cir. 1985) (applying Alabama law), involved an injury to an employee who became paralyzed after welding with allegedly defective manganese wire. The manufacturer of the wire sought indemnity from the employer of the injured employee. While the court addressed the issue of "active" versus "passive" negligence, this was in the context of a claim of liability against an employer who allegedly failed to inspect the product provided by another party which caused injury versus the supplier of an allegedly defective product. In fact, starting *with Mallory S.S. Co. v. Druhan*, 17 Ala.App. 365, 84 So. 874 (1920), many cases which address the issue of "active" versus "passive" negligence, are those which deal with injuries caused by allegedly dangerous or defective products involved in a workplace injury where indemnity claims are asserted between "passive" employers or contractors and "active"

---

for common law indemnity against Al & Sons.

sellers or manufacturers of allegedly defective products used in the workplace.

For example, *Coats v. CTB, Inc.*, 173 F.Supp.2d 1200 (M.D. Ala. 2001), a case also cited by Colony, dealt with a claim of indemnity by a construction company against a nail gun manufacturer and other suppliers which the contractor claimed proximately caused the faulty construction of a chicken house. While addressing the issue of "active" versus "passive" negligence, the district court held that the "passive" contractor was able to assert a claim of indemnity against the "active" manufacturer of the defective equipment (the nails and nail guns) used in the construction of a chicken house subsequently found to be defectively constructed as a result of the allegedly defective nail guns and nails.

The instant case is not an "active" versus "passive" scenario. As described previously, Regeneration assumed various duties with Saucier Investments, including actively supervising all work performed at the site and protecting the premises from loss. Regeneration and its employees were actively on the job site on a daily basis, including Roy Granger, who testified he was there approximately 90% of the time. Colony's attempts, on behalf of Regeneration, to now distance Regeneration from Al & Sons and minimize its responsibilities on the job site is contrary to the undisputed evidence in this case which supported an independent claim of alleged liability by Saucier Investments against Regeneration. Regeneration was not sued by Saucier Investments simply because it was the "general contractor" and something happened involving one of its subcontractors. To the contrary, Regeneration was assigned, and

assumed, significant overall responsibilities with respect to the work, safety and oversight of the Pepperell Mill complex. Regardless of how the fire ultimately started, Regeneration and Al & Sons sat together as joint tortfeasors in the Saucier Investments case. As such, the Defendants assert they are entitled to summary judgment in this case.

      C.     <u>The Cause of the Fire Remains Undetermined</u>

While Colony, on behalf of Regeneration, asserts in its summary judgment response that the alleged wrongful conduct of Al & Sons "most likely" caused the fire at issue in this case, the ultimate cause of the fire remains undetermined. (See Exhibit K to Doc. 11, Depo. and Report of Deputy State Fire Marshall Stan Ross, p. 1 and 5). Colony has presented no additional evidence, particularly expert evidence, that any actions or inactions on behalf of Al & Sons and its employees proximately caused the fire at issue in this case. For example, as referenced in the report of Deputy State Fire Marshal Stan Ross, a gas-powered bobcat was present on the third floor of the building and had been malfunctioning on the day of the fire at issue in this case. *Id*. at p. 4-7. The bobcat could not be ruled out by Deputy Ross as a potential cause of the fire at issue in this case. While the Defendants assert that who or what caused the fire is not determinative as to the joint tortfeasor status that was alleged in the Saucier Investments case, the Defendants want to make it clear that the cause of the fire was not established in the Saucier Investments case, nor has it been established with any degree of legal certainty in the current litigation where no additional significant discovery has taken place. Regardless of how or why the fire started, Regeneration and Al & Sons were sued by

the building owner, Saucier Investments, as joint tortfeasors based on the independent actions of each of the entities. As such, the entities were properly sued as joint tortfeasors and no recovery can be had by one against the other in this case pursuant to established Alabama law.

**CONCLUSION**

Based on the undisputed material facts, arguments and authorities set forth above, the Defendants assert they are entitled to summary judgment in this case. The parties were sued by Saucier Investments in the underlying state court litigation as joint tortfeasors. Indeed, during the state court proceedings, Regeneration did not seek or state any claim of indemnity against Al & Sons, nor did it assert any affirmative defenses in which it pled lack of agency or some other similar defense supporting Colony's current contention that Al & Sons was an independent contractor that its insured, Regeneration, had no control over at the job site. The consistent deposition testimony of Darryl Saucier and Roy Granger contradict Colony's position in this case, as do the pleadings filed by the parties in the Saucier Investments state court litigation.

From the outset, Colony has attempted to avoid paying anything under its policy of insurance sold to Regeneration to resolve any claims involving the fire at issue in this case. As detailed in the Defendants' undisputed material facts in Doc. 11, Colony filed a declaratory judgment action against its insured, Regeneration and Saucier Investments, before Regeneration had even been sued in the Saucier Investments case. In its declaratory judgment action, Colony sought to avoid coverage by relying on policy

language that no coverage was available to Regeneration for any property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations. . . ." After suing its own insured and while also directing the defense of Regeneration in the Saucier Investments state court lawsuit, Colony came to mediation and agreed to settle the case. Taking into account all of the facts of the underlying case, a negotiated confidential settlement was reached with Colony contributing 32% of the total settlement proceeds of the total settlement amount and the insurance carrier for Al & Sons and Al Mitchell contributing 68% of the total settlement amount. It was only at that point of the mediation that the representative of Colony who attended the mediation asserted, for the first time, that Colony would be seeking to pursue a common law indemnity claim against Al & Sons. Even though Colony was not a party to the underlying Saucier Investments lawsuit and did not participate in it directly, it now comes to court and seeks to present new legal arguments contrary to its position in its declaratory judgment case against Regeneration.

Based on the foregoing, the Defendants respectfully request this Honorable Court to enter summary judgment in their favor on all claims asserted by Colony in this declaratory judgment action. There are no disputed issues of material fact and the Defendants are entitled to judgment as a matter of law pursuant to Rule 56, Fed.R.Civ.P.

Respectfully submitted this the 18th day of May, 2015.

/s/S. Anthony Higgins
S. ANTHONY HIGGINS
Attorney for Defendants

OF COUNSEL:
HOLTSFORD GILLILAND HIGGINS HITSON & HOWARD, P.C.
P. O. Box 4128
Montgomery, Alabama 36103
Tel: 334-215-8585
Fax: 334-215-7101

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of May, 2015, an exact copy of the foregoing instrument has been served (a) through the Court's e-filing system; (b) by placing a copy of the same in the United States Mail, postage prepaid and properly addressed; and/or (c) by personal/firm email to the following:

M. Andrew Donaldson
Ryals, Donaldson & Agricola, P.C.
60 Commerce Street, Suite 1400
Montgomery, AL 36104

/s/S. Anthony Higgins
OF COUNSEL

14